CASE 102.—PROSECUTION BY COMMONWEALTH AGAINST CURTIS JETT FOR MURDER.—Decided March 25, 1905.

## Jett v. Commonwealth.

Appeal from Harrison Circuit Court.

Defendant convicted and appeals.—Reversed.

1. Homicide—Change of Venue—Continuance—Absence of Counsel—Trial—Terms of Court.—A special term of the Circuit Court may be called in any county by order of the court at the last regular term in that county, or by notice signed by the judge and posted at the court house door of the county for 10 days before such special term.

2. When the Commonwealth's Attorney in a criminal case withdrew a motion for a change of venue, by leave of the court, after it had been granted, but before the order had been entered, he was not precluded from making another application for a change after a mistrial, by St. 1903, Sec. 1118, providing that no more than one change of venue or application therefor shall be allowed the Commonwealth in the same case.

3. Where, in a prosecution for murder, an equal number testified pro and con on an application for a change of venue for prejudice of the inhabitants of the county, an order overruling the motion was not error.

4.  In a prosecution for homicide, it was claimed that defendant did the shooting from a window of the court house of B. county, while he claimed that at the time of the shooting he was in another building. A witness for the Commonwealth testified that at the time of the shooting he was in the office of P., who was also a witness for the Commonwealth and that, when the shooting occurred, P. went to the window of his office and looked out, and then called the name of defendant. This the court excluded, but himself said to the witness, "To whom he (P.) called the attention of those in the office, if he did to any person," and witness then said, "To (defendant)." Held, that such evidence was hearsay and inadmissible.

5.  Defendant having been convicted of murder and sentenced to confinement for life, a large part of the community was incensed because his punishment had not been fixed at death. and a large number of citizens caused the juror who was thought to have been instrumental in securing the infliction of the lesser penalty to be burned in effigy. The trial had been long and arduous, taking place in midsummer, and within less than a month thereafter defendant was put on trial on a second charge of murder. Both of his leading counsel were necessarily absent, and his remaining counsel was not acquainted with his witnesses, and the defendant had been in jail for months at a place 100 miles from his home, where his witnesses lived. Held, that an order denying defendant a continuance for absence of his counsel was erroneous.

HAZELRIGG, CHENAULT & HAZELRIGG and J. J. BLANTON, for appellant.

A. F. BYRD and N. B. HAYS, for Commonwealth.

OPINION OF THE COURT BY JUDGE BARKER—Reversing.

Curtis Jett was indicted by the grand jury of Breathitt county for the murder of James Cockrill. This indictment was returned on the 30th day of May, 1903, at a special term of the court called by the judge in vacation by posting notices on the court house door in accordance with the provisions of section 964 of the Kentucky Statutes. At the same time the

grand jury indicted appellant and one Thomas White, charging them jointly with the murder of J. B. Marcum. Subsequently, the Commonwealth's attorney filed his affidavit stating, substantially that, in his opinion there existed such a state of lawlessness in Breathitt county that the officers whose duty it was to summon witnesses, select jurors, and have charge of the trial of the case would be prevented from discharging their duty, and the jurors so selected would be deterred from rendering an impartial verdict. Based upon this affidavit, he moved the court to transfer the case for trial to another county outside of the twenty-third judicial district. To this motion the defendant objected, but the court announced that the motion would be sustained and the venue of the prosecution changed to the county of Morgan; whereupon the Commonwealth's attorney, after consultation with his associates in the prosecution, asked to be allowed to withdraw the motion for a change of venue, which the court permitted to be done over the objection of the defendant and the order was never entered upon the record.

Afterwards, a trial was had in the case of the Commonwealth v. Jett and White for the murder of J. B. Marcum, which resulted in a mistrial—the jury being unable to agree upon a verdict; whereupon the Commonwealth's attorney renewed his motion for a change of venue in this case, and the court on the 19th day of June, 1903, entered an order changing the venue of trial from Breathitt to Harrison county. A similar order was made in the case of Commonwealth v. Jett and White for the murder of Marcum. A trial was had in the latter case in the Harrison Circuit Court, which resulted, on the 15th day of August, 1903,

in a verdict of guilty against the defendants, and their punishment being fixed at confinement in the penitentiary for their lives.

On the 8th day of September, 1903, the appellant, upon the calling of this case in the Harrison Circuit Court, filed a special demurrer to the jurisdiction of the court, and a motion to quash the indictment, both of which were overruled. He then filed an affidavit, and moved the court to continue the case for trial, which was also overruled, and the case was then set for the seventh day of the term for trial, being a week later than the day on which the motion for a continuance was overruled. After overruling this motion, the court entered an order offering the accused a special venire to be selected either from Nicholas Robertson or Pendleton counties, if it so desired. This was not accepted by the defendant. After the motion for a continuance was overruled, appellant moved the court for a change of venue to another county, which was overruled. The trial resulted in appellant's conviction, and his punishment being fixed at death; of which he complains on this appeal.

The motion to quash the indictment was based upon a statement contained in the affidavit of the appellant, that the indictment against him was returned by the grand jury at a special term of the Breathitt circuit court, which had been called by the judge by posting notices on the court house door, and the fact that no order for the special term had been made upon the order books of the court at the last regular term of the court. And it is now urged that "a special term of court to hear, determine or try criminal or penal cases can only be called by the court or ordered by the court when in session, and that the judge of said

court had no authority to call a special term in vaca-
tion.   That the regular term of the Breathitt circuit
court fixed by law and order of court begins on the
first Mondays in March, June and November in each
year, and continues for three weeks, and that at no
special term of the Breathitt circuit court was an
order made by said court calling a special term of
the court for the purpose of returning indictments on
hearing or determining criminal or penal cases.''
This question arose in the case of Thomas White v.
Commonwealth, decided by this court on the 17th day
of March, 1905, as did also the question of the juris-
diction of the Harrison circuit court, based upon the
claim that, after the Commonwealth's attorney made
the first motion for a change of venue from Breathitt
county, which he subsequently withdrew by leave of
court, this exhausted his right to make further appli-
cation, and the action of the court in granting the sec-
ond motion was void under the provisions of section
1118, Ky. Sts.   As the indictments in the case of
White v. Commonwealth, and that at bar, were re-
turned by the same grand jury, and the procedure up
to the time they were filed in the clerk's office of the
Harrison circuit court by an order changing the venue,
was identical, it is unnecessary here to do more than
refer to the opinion of the court in the former case
as having decided both of the questions under consid-
eration adversely to appellant.

The motion for a continuance was based upon the
necessary absence of two of appellant's counsel, B.
F. French and J. D. Black.   The motion for a change
of venue was based upon a petition in which was set
forth that appellant and Thomas White had just been
tried in the Harrison circuit court for the murder

of J. B. Marcum; that this trial had ended on the 15th day of August, 1903, the jury rendering a verdict of guilty as to each, and sentencing them to the penitentiary for their natural lives; that this trial had created great excitement throughout the city of Cynthiana and the county of Harrison, and the public mind had become inflamed against him (appellant), and great prejudice had been aroused against him by reason of the fact that he was only sentenced to the penitentiary for life instead of being hung; that one of the jurors in the Marcum case, Jake King, whom it was claimed had been instrumental in preventing appellant being sentenced to be hung, had been burned in effigy by a mob, and subsequently indicted by the grand jury of Harrison county for false swearing in qualifying himself as a juror in the case.

Upon the trial of the question as to whether or not appellant was entitled to a change of venue, a large number of citizens testified in appellant's behalf, to the effect that they did not believe, owing to the facts set out in the petition, that appellant could obtain a fair and impartial trial. Whereupon the court overruled the motion for a change of venue. The orders of the court in overruling the motions for a continuance and for a change of venue were set forth as grounds for a new trial, as were several other rulings of the court claimed to have been erroneous and prejudicial to his interest.

As we have reached the conclusion that this case should be reversed for a new trial, we shall not discuss the facts further than necessary to illustrate the principles of law decided, nor notice any grounds assigned for a new trial except those which, in our opinion, were erroneous and prejudicial to the substantial rights of the appellant.

James Cockrill was assassinated on the 20th day of July, 1902, by one or more persons concealed in the second story of the court house in Jackson, Kentucky, who shot him from the windows of that building while he was standing in the street below. He did not at once die, but was taken to Lexington, Kentucky, for medical treatment, and there died of his wounds within a day or two after they were inflicted. Several witnesses testified to seeing the appellant in the second story of the court house at the time of the shooting, and identified him as one of the assassins. The defense was an alibi, the appellant claiming and undertaking to show by evidence that, at the time of the shooting, he was in another building, known as "Hargises' store," in company with the proprietors and several others. One of the witnesses for the Commonwealth, J. L. McCoy, testified that, at the time of the shooting, he was in the law office of John Patrick, another witness for the Commonwealth; that when the shooting occurred, Patrick went to the front window of his office and looked out and the witness was allowed to state that, while looking out of the window and apparently at those doing the shooting, he (Patrick) called the name of Curtis Jett. Upon objection, this answer was excluded by the court, who said to the witness: "I said to you not to say what Mr. Patrick said; if he called attention to any person, you may say to whom he called attention without saying what he said. A. As I understand now, I am to answer whose attention he called? The Court. To whom he called the attention of those in the office if he did to any person. A. To Curtis Jett." This evidence was incompetent as hearsay and must have been prejudicial to the substantial rights of the appellant. The

witness, McCoy, did not, himself, see Curtis Jett, but
was allowed to state that Patrick said he saw him.
The fact that the court required the witness to elimi-
nate the statement, he "called the name" (of Curtis
Jett) and substitute the expression, he "called atten-
tion" to Curtis Jett, does not alter the incompetency
of the testimony. The practical result was that Pat-
rick called attention to Curtis Jett by saying he saw
him. This was injurious to the defense of appellant,
because it tended to discredit and break down his
alibi. If he was in Hargis' store while the shooting
was taking place, he was not where Patrick could have
seen him at the moment of the shooting. As what
Patrick said about seeing Curtis Jett was hearsay,
but tended to prejudice the substantial rights of the
appellant, it necessarily follows that the court erred
in admitting it as evidence.

We think the court also erred in not granting ap-
pellant a continuance under the peculiar circumstan-
ces surrounding the case at the time it was called for
trial. He had just been convicted of murder, and it
is clearly established that, at least, a large part of
the community thought his punishment should have
been fixed at death, instead of confinement in the peni-
tentiary for life. The passions of a large number of
citizens were so aroused as to cause them to burn in
effigy the juror who was thought to have been instru-
mental in securing the infliction of the lesser penalty.
No one can read this record without being convinced
that there was great excitement in Harrison county
concerning the Marcum trial, and great indignation
that the defendants were not hung instead of being
sentenced to the penitentiary for life. The trial in the
Marcum case had been long and arduous, taking
place in mid-summer. Within less than a month

after its completion, the appellant was put upon his trial for a second charge of murder. His leading counsel were necessarily absent; one was sick and the other detained by business which prevented his being present at the trial. It is shown that the remaining counsel, J. I. Blanton, was not acquainted with appellant's witnesses, and that he had mainly relied upon attorneys' Black and French to conduct his defense. The appellant had been in jail for months, at a place at least one hundred miles from his home, where his witnesses lived, and he was necessarily, by all of these circumstances, placed at a great disadvantage, in being forced into trial without the presence of the counsel upon whom he mainly relied to defend him, and who were personally acquainted with his witnesses.

When popular passion is inflamed, its effect cannot be measured or weighed, and when one charged with a high crime is in danger of being its victim, every precaution should be taken in order that the trial may be had free from its influence. The Commonwealth is more deeply interested in having an unprejudiced trial than in the conviction of the defendant, no matter what his guilt.

We do not think the court erred in refusing to change the venue of trial, but under the very exceptional circumstances surrounding the defendant at the time, his motion for a continuance should have been sustained.

For the reasons indicated, the judgment is reversed for proceedings consistent with this opinion.

Whole court sitting.