## French Combs, Shade Combs, Leslie Combs and George Allen, Jr. v. Commonwealth.

(Decided December 15, 1922.)

### Appeal from Boyd Circuit Court.

1. Criminal Law—Vacation of Bench.—One accused of crime is entitled to have his case tried by a judge who had no interest in the subject matter out of which the charge arose; and on motion made by the accused for the presiding judge to vacate the bench, supported by affidavits showing that the judge was interested in the subject matter that was the cause of the difficulty out of which the offense grew, it is the duty of the judge to vacate the bench, and his refusal to do so is error.

2. Criminal Law—Change of Venue.—Where on the calling for trial of a prosecution for murder the Commonwealth attorney files a petition for a change of venue, and in support thereof files the affidavits of citizens of the county, showing that it is not possible for the Commonwealth or the accused to obtain a fair trial within the county, it is error to refuse to sustain the motion for a change of venue.

3. Criminal Law—Change of Venue.—Although the trial court erred in refusing to grant a change of venue on motion of the Commonwealth attorney, and further erred in refusing to vacate the bench on motion of the accused, a subsequent order granting a change of venue on the supplemental petition of the Commonwealth attorney was not void, but was only erroneous; and inasmuch as counsel for accused cooperated with the Commonwealth in its effort to effect a change of venue to the extent of taking affidavits that were filed with the petition and motion for a change, and did not object or except to the filing of the supplemental petition or to the order changing the cases to another county, on reversal of the judgment the cases will not be returned to the original county for further proceedings, but will be remanded for another trial to the county to which they were transferred.

4. Criminal Law—Change of Venue.—An order overruling a motion for a change of venue is interlocutory and subject to the control of the court at a subsequent term, and the court has the power, at a subsequent term, to set aside its order made at a former term overruling the motion and to grant the change; and the order granting the change is not void, even though made by a judge who was disqualified to try the case.

5. Criminal Law—Conspiracy.—Slight evidence of a conspiracy is sufficient to take a case to the jury on the question of the existence of the conspiracy. The evidence examined in this case and held to justify the overruling of the motion of defendants for a peremptory instruction and to authorize the giving of an instruction conformable to the conspiracy charged in the indictment.

6. Criminal Law—Submission to Jury.—On the facts and circumstances developed on the trial of this case it is held that there was sufficient evidence of the commission of the offenses charged as to all of the defendants to warrant the submission of the case to the jury.

7. Homicide—Self-Defense—Instructions.—If on the trial of one charged with the killing of another the evidence tends to raise the issue of self-defense, although the defendant denies the killing, an instruction based on the theory of self-defense is proper and it is error to refuse to instruct the jury on that theory.

8. Homicide—Self-Defense—Instructions.—Even though the defendant denies the shooting of the deceased and all his evidence tends to support that theory of the case, still, if there is any evidence tending to show that he shot the deceased in self-defense or in the defense of those acting in concert with the defendant, it is error to

refuse to instruct the jury on self-defense or to refuse to give an instruction justifying the shooting if the jury believe it to have been done in the defense of a brother or one acting in concert with the accused.

9. Criminal Law—Conspiracy—Evidence.—Where the defendants are charged with a conspiracy to commit murder, and the defense is that another crowd had formed a conspiracy to prevent the holding of an election and the defendants and their friends merely acted on the defensive in the shooting that resulted in the death of deceased, any evidence tending to establish the defense or any incident from which its verity can be inferred, whether it relate to incidents preceding the election or immediately following it and before the dispersal of the crowd engaged in the shooting in which decedent lost his life, is competent to be considered by the jury.

WAUGH & HOWERTON, RYLAND C. MUSICK, W. H. FLANNERY and HENRY L. SPENCER for appellants.

CHAS. I. DAWSON, Attorney General, THOMAS B. McGREGOR, Assistant Attorney General, A. H. PATTON, A. S. JOHNSON, DYSARD & ADAMSON and A. FLOYD BYRD for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

Leslie Combs, George Allen, Jr., French Combs and Shade Combs were indicted in the Boyd circuit court for the murder of George McIntosh committed on the 8th day of November, 1921, at what is known in the record as the Clayhole precinct in Breathitt county. The indictment contains several counts, one of which charges the commission of the murder pursuant to a conspiracy entered into by the defendants. The others aver as to each of the defendants that he committed the murder and the others aided and abetted him. From a judgment of conviction, sentencing Leslie Combs and George Allen, Jr., to fifteen years and French Combs and Shade Combs to five years in the penitentiary, this appeal has been prosecuted.

The defendants ask a reversal of the judgment on the following grounds: (1) The presiding judge of the Breathitt circuit court should have vacated the bench on motion made by defendants; (2) the order made by the judge of the Breathitt circuit court, changing the venue of the prosecution from Breathitt county to Boyd county, was void; (3) the Boyd circuit court had no jurisdiction of the action; (4) instruction No. 1 given on the trial of the case was erroneous; (5) a peremptory

instruction to find the defendants, French Combs and Shade Combs, not guilty should have been given at the conclusion of the Commonwealth's evidence; (6) the trial court erred in not giving an instruction on self-defense; and (7) errors in admitting incompetent testimony against the defendants and excluding from the jury competent evidence offered by them.

We will discuss the errors assigned in the order in which they are mentioned and in which they are argued in brief of counsel. Before proceeding to consider them, however, it is proper to outline the respective theories of the Commonwealth and the defense as they are shown in the evidence, and this makes it necessary to refer briefly to the conditions existing in the vicinity of the Clayhole voting precinct immediately preceding the tragedy occurring on November 8, 1921, in which four men were killed and seventeen others wounded. The Clayhole precinct had been recently created, and the evidence shows that normally it was largely Democratic. It appears that at the November election, 1921, there were to be elected the county officers for Breathitt county and also the officers for the judicial and senatorial districts in which that county is located. The campaign for these offices was hotly contested. On the Sunday before the election several men who resided at Jackson proceeded to the Clayhole precinct, as they say, for the purpose of working for the election of the Republican ticket, but, as appellants contend, for the purpose of preventing an election being held in that precinct. Defendants and others who were interested in the election were also engaged, on the Sunday and Monday preceding it, in working for the Democratic ticket. The two crowds came in contact with each other on several occasions in the course of their respective activities as indicated. On the morning of election day they all appeared at the voting place for that precinct. It was a small building, in front of which a wire had been stretched in order to prevent the voters and others from pressing up to the door of the building. A short time after the voting began, and when not more than about forty ballots had been cast, a difficulty arose which eventuated in a fight between the opposing factions in which a great many shots were fired, and as a result of which, as stated, four men were killed and seventeen wounded. Three of the men killed were members of the faction to which defendants belonged, and one of them was a mem-

ber of the opposing crowd, sometimes referred to in the record as the Campbell crowd.

The evidence as to the origin of the conflict in which decedent lost his life, and as to who killed him and who fired the first shot, is extremely conflicting. The trial of these cases consumed several days. The testimony is voluminous, and on every material issue of fact there is persistent contradiction. A detailed analysis of the evidence, which consists of two theories diametrically opposed to each other, if it were practicable to give such an analysis in this opinion, is not, in our judgment, necessary to a decision of the questions relied on for a reversal. Having, therefore, given something of the conditions existing at the Clayhole precinct immediately preceding and on the day of the election, we will now state the respective theories of the prosecution and defense as developed in the proof, in order that the legal questions presented may be determined.

According to the Commonwealth's theory, George Allen, who had been appointed an inspector at the polls, grabbed Katie Sizemore by the shoulder, as she started in the door, and demanded that she tell him how she was going to vote; and, being informed that she expected to vote for certain named candidates, he said, in substance, that she could not vote that way, and thereupon Ed Combs and Allen engaged in an altercation with regard to Allen's right to enter the room in which the votes were being cast; that Combs insisted that it was against the law for Allen, who had not been sworn in as an election officer, to enter the house while the votes were being cast, and Allen said, "Damn the law, there is no law," and called Combs a vile name, making a menacing gesture as if to draw a pistol; that about that time George McIntosh, who was an inspector or challenger, came out of the house and stated, in substance, that if they didn't hold the election fair they could hold it themselves, and "I am not going to be in it;" that Leslie Combs then appeared at the door of the house and George Allen said, "Let her go, Les," and Leslie Combs, who was then within a few feet of McIntosh, fired two shots, both of which struck McIntosh, who fell dead; and that immediately the firing, in which Shade Combs and French Combs participated, became general. It is also the theory of the Commonwealth that the statement of George Allen just quoted was the signal for the execution of a prear-

ranged plan of defendants and their friends to intimidate the voters and workers at the election.

The contention of the defendants is that Will and Amby Barnett, Will Campbell, Ed Combs and others of that crowd came to the election armed for the purpose of destroying it; that Allen did not grab the Sizemore woman by the shoulder, but met her at the door, shook hands with her, and, being informed as to how she expected to vote, asked how much she had been paid to vote that way, and, when informed seven dollars, offered her ten dollars to vote differently, which offer she accepted; that Ed Combs immediately began to abuse Allen, using the incident as a ruse to start trouble; that during the argument between Combs and Allen no such statement was made by George Allen as the Commonwealth's witnesses attributed to him; that while Allen and Combs were arguing, Shade Combs and Mary Hardin, a sister of Leslie Combs, took Allen around the house to keep down trouble, and just as they started with him the deceased rushed out the door and made an attempt to grab Allen, saying: "Let me to the pale faced son of a bitch," or words to that effect. By that time his co-conspirators had come up, and deceased fired at and mortally wounded Asbury Combs, a brother of Leslie Combs, and then Cleveland Combs, a brother of Leslie and an election officer, who was also killed, came to the door of the house and fired at deceased, killing him. It is also the contention of the defendants that Leslie Combs never fired a shot, that George Allen did not fire at all, and that none of them aided or abetted in the shooting of George McIntosh.

The first three grounds relied on for a reversal of the judgment are so closely allied to each other that we will consider them collectively, disposing of each of the points raised. We should say, at this juncture, that the judge of the Breathitt circuit court, whose rulings are first complained of, was a candidate to succeed himself at the November election of 1921, and that, several weeks after the election was held, the four defendants were indicted in Breathitt county for the murder of George McIntosh. At the same time indictments were returned against a number of the prosecuting witnesses for the killing of Ethan Allen, Cleveland Combs and Asbury Combs, who were members of the crowd to which defendants belonged. At the March term, 1922, of the Breathitt circuit court, the Commonwealth's attorney

filed a petition in the prosecutions growing out of the Clayhole precinct election, and moved the court for a change of venue from Breathitt county to some other county to be agreed upon or not objected to by the parties, but not to Lee, Estill, Perry or Owsley counties. The petition was supported by the affidavits of a number of citizens, some of which were taken by counsel for defendants. The motion for a change of venue was overruled, and then defendants filed a motion, supported by their joint affidavits, to have the presiding judge vacate the bench in their cases. That motion was also overruled, and these cases, with the others growing out of the affair at Clayhole, were continued to a special term called to begin May 1, 1922. On the second day of the special term at which the cases were set for trial, the Commonwealth attorney filed a supplemental petition for a change of venue, and thereupon the court granted the change of venue and transferred the cases to the Boyd circuit court for trial. No objection was made by defendants to the motion for a change of venue, nor was any exception taken to the ruling of the court in granting it or in designating Boyd county as a place where the cases should be tried.

We are of opinion that the affidavit for a vacation of the bench by the presiding judge was sufficient, and that, upon its filing, he should have vacated the bench; and we are also of opinion that the petition for a change of venue, and the affidavits in support thereof, which were filed before the motion for a vacation of the bench was made, conclusively show that it was not possible for defendants, nor for the defendants in the other prosecutions, nor for the Commonwealth of Kentucky, to obtain a fair and impartial trial in Breathitt county. It is the contention of defendants that if it was error for the presiding judge to refuse to vacate the bench, then all orders thereafter made by him were void. We think that it was error to refuse to vacate the bench, but we cannot hold that the subsequent order, granting a change of venue, was void. If these cases had been tried in the Breathitt circuit court by the presiding judge, and there had been no other errors committed on the trial except that of the refusal to vacate the bench, we would feel compelled, under Massie v. Commonwealth, 93 Ky. 588, and Kentucky Journal Publishing Co. v. Gaines, 139 Ky. 747, to reverse the judgment on that ground alone. But it does not follow that the order changing the venue

was void. Petrey v. Holliday, 178 Ky. 410, relied on by defendants, does not so hold, nor is there any other decision of this court, so far as we have been able to find, sustaining that contention. The weight of authority is, that in the absence of an inhibiting statute the acts of a disqualified judge are not nullities but are merely erroneous and liable to be avoided or reversed on appeal. 15 R. C. L. 542. In view of the fact that counsel for defendants cooperated with the Commonwealth in its efforts to effect a change of venue to the extent of taking affidavits that were filed with the petition and motion for a change of venue, and did not object or except to the filing of the supplemental petition or to the order transferring the cases to Boyd county, we do not feel justified in applying to these cases a rule that is contrary to the weight of authority, or in reversing the judgment and sending the cases back to Breathitt county.

Nor can we adopt the view that the Boyd circuit court had no jurisdiction because the order transferring the cases to that court was unauthorized under section 1118 of Kentucky Statutes. That section provides that: ''Not more than one change of venue or application therefor shall be allowed to any person or the Commonwealth in the same case.'' The record shows that a motion for a change of venue was made by the Commonwealth and overruled by the court, and later an amended petition, elaborating the grounds set up in the original petition, was filed, upon which the change was granted. We are not disposed to give the statute the narrow construction contended for by counsel, nor do we conceive that White v. Commonwealth, 120 Ky. 178, Jett v. Commonwealth, 139 Ky. 794, and Frazier v. Commonwealth, 182 Ky. 620, vitiate the order. The original petition was never withdrawn, and the supplemental petition merely elaborated the grounds set up in the original petition. And, although the court had overruled the motion on the original petition, still, under Fletcher v. Commonwealth, 123 Ky. 571, this order was only interlocutory and was subject to the control of the court at a subsequent term. Under the opinion in that case a court, wholly aside from any renewal of a motion for a change of venue, has the power to set aside its order overruling a motion made at a previous term and to grant the change. In the light of that authority, and in view of the fact that the original motion should have been sus-

tained, and that no objection was made to the motion when filed and no exception taken to the order when entered, we are constrained to hold that the Boyd circuit court had jurisdiction.

Instruction No. 1 authorized a conviction of defendants if the jury should believe from the evidence that they, with others, confederated together for the purpose of intimidating or injuring any of the officers of the election at the Clayhole voting precinct, at the election held at that precinct on November 8, 1921, or for the purpose of unlawfully or feloniously intimidating or injuring any one or more of the voters in that precinct, or to prevent any one or more of such voters from casting their votes, and that in pursuance and furtherance of such agreement, conspiracy and confederacy, and in execution thereof, while the same existed, any one of the defendants, or any of the parties engaged with them in the alleged conspiracy, unlawfully shot or killed George McIntosh with a pistol loaded with powder and leaden ball or some other hard substance, from which shot and wound George McIntosh then and there and before the finding of the indictment died, they should find any one or more of the defendants, who were parties to such agreement or conspiracy, guilty of wilful murder, as charged in the indictment, and fix his or their punishment at death or confinement in the state penitentiary for life in the discretion of the jury according to the proof.

It is urged on behalf of defendants that this instruction was not authorized under the evidence; in other words, that there is nothing in the record tending to show the existence of a conspiracy for any of the purposes mentioned in the instruction, or that any of defendants was a party to such conspiracy. In making this argument counsel emphasize the point that the Clayhole precinct, under ordinary conditions, was largely Democratic, and there could be no conceivable reason why the defendants should desire to prevent an election. They refer to the fact that one man who offered to cast his ballot at the precinct for the Democratic candidates was denied the privilege of so doing by Leslie Combs and Cleveland Combs because he did not reside in the precinct. It is also said that the conduct of defendants and their friends, with reference to arranging for the election, clearly indicates that they had no desire or purpose to prevent an election being

held. This evidence considered with the supporting facts and circumstances shown in the record affords substantial ground for the contention. But we must look to all the evidence, and on the other hand there is evidence for the prosecution that party lines were not being observed at the election, and there was an attempt on the part of defendants and their friends to intimidate some of the workers and voters. The credibility of none of this evidence do we undertake to appraise. It suffices that it is the established rule in this jurisdiction that slight evidence of a conspiracy is sufficient to take a case to the jury on the question of the existence of the conspiracy; and, looking at the evidence as a whole, we have concluded that the instruction was not objectionable on the ground that there was no evidence tending to show a conspiracy.

The next insistence of appellants is that a peremptory instruction to find French Combs and Shade Combs not guilty should have been given at the conclusion of the Commonwealth's evidence. If this contention is sound, then it must be held that there was no evidence whatever tending to show that either of them shot George McIntosh, or aided or abetted the person who did shoot him. It was under the instruction on manslaughter, authorizing a conviction of any one of the defendants of that offense and the others as aiders and abettors, that defendants were convicted. Without reciting the evidence connected with the shooting of deceased, it is enough, it seems to us, to say that the Commonwealth introduced evidence showing that Leslie Combs shot deceased, that defendants all participated in the general shooting that occurred, and that there were some circumstances and facts in evidence tending to show that they all acted in concert and were near enough to and did assist or encourage the shooting of McIntosh. In these circumstances, it is our conclusion that the motion for a peremptory instruction as to French and Shade Combs should have been overruled.

The sixth ground for a reversal is that the court erred in not giving an instruction on self-defense. We think this is maintainable. The contention is combatted on the theory that all four of defendants testified that they did not shoot at George McIntosh; that Leslie Combs and George Allen said that they did not fire a single shot, and accordingly it is argued for the Commonwealth that as to those two at least self-defense was

not available. The argument as applied to the facts in these cases rests on an erroneous hypothesis. In a case where the defendant denies the killing, and there is no evidence adduced by either party which tends to show that the killing might have been done in self-defense, an instruction presenting that defense is unauthorized. But if the evidence tends to raise the issue of self-defense, although the defendant denies the killing, an instruction based on that theory is proper and should be given. 13 R. C. L., p. 813. This is the rule in Kentucky. Gatliff v. Commonwealth, 32 Ky. Law Rep. 1063; Elliott v. Commonwealth, 152 Ky. 791; Leadingham v. Commonwealth, 180 Ky. 38. Not only is the defendant in this class of cases entitled to a self-defense instruction, but he is also entitled, if the evidence warrants it, to an instruction justifying the shooting if the jury believe it to have been done in the defense of a brother or one acting in concert with him. Hall v. Commonwealth, 162 Ky. 439. We, therefore, see that the right to an instruction on self-defense, or one justifying the shooting if done in the defense of those acting in concert with the accused, is not precluded by reason of the defense that accused did not shoot.

The testimony for the Commonwealth shows that Leslie Combs fired the shot that killed George McIntosh. It appears from the testimony of the defense that George McIntosh, at the time, was firing at Leslie's brother, Asbury Combs, who was killed. There is also evidence showing that the other defendants discharged their pistols in the general firing that commenced immediately after McIntosh emerged from the door. The jury might have believed that Leslie Combs did not tell the truth when he testified that he did not fire a shot, but that he did shoot George McIntosh. The verdict would seem to answer that suggestion affirmatively. But the jury might also have believed, under the evidence, that the shooting of McIntosh by Leslie Combs was an act of self-defense or was committed in defense of Asbury Combs. Here an instruction on self-defense and also one on the right to shoot in the necessary defense of those acting in concert with the defendants should have been given. On another trial, if the evidence be the same as on the last, such an instruction will be given, properly qualified with respect to conspiracy to commit murder.

The final contention of appellants is that the court excluded from the consideration of the jury competent testimony offered by them and admitted incompetent testimony offered by the Commonwealth. It is not practicable, within the compass of this opinion, to dispose of all the contentions made on these grounds. A few to which special attention should be called will be pointed out. One of them is the exclusion of the testimony by which defendants offered to prove that immediately after the fight some of the prosecuting witnesses took the ballots from the voting place, shot them up, and threw them into the creek. Another is the exclusion of the statements and declarations made by the opposing faction shortly after the fight had stopped, and while they were yet on the ground. This evidence was improperly excluded. It should be remembered, in this connection that the theory of the defense was that McIntosh and his friends had formed a conspiracy to prevent the holding of the election, and that defendants and their friends, whatever they did, were acting purely on the defensive. Any evidence tending to establish this defense, or any incident from which its verity could be inferred, was competent to be considered by the jury. Accordingly the jury should have been permitted to hear the testimony as to the conduct of the opposing faction with respect to the taking and destruction of the ballots, and also with respect to the declarations that they made immediately after the shooting had ceased. Not only was it competent for the reason just stated, but, in our judgment, it was also competent as a part of the *res gestae.*

It was likewise competent to show, as defendants offered to do, that a few days before the election a number of men belonging to the faction opposed to defendants, and who were engaged in the shooting at Clayhole, had been sworn in as deputy coroners. Similarly it was proper to show that Amby Davis, one of the prosecuting witnesses, made a statement a day or two before the election to the effect that he had his saddlebags full of cartridges, and indicating that he expected serious trouble at the election.

All of the questions of evidence cannot, as we have remarked, be dealt with in this opinion. We have pointed out some of the errors committed in the rejection of evidence offered by the defense. It may be said

finally on the subject, that any evidence tending to show a conspiracy on the part of the Campbell crowd to destroy the election, or indicating that defendants were merely acting in resistance of a purpose of that kind, whether it relates to incidents preceding the election or immediately following it and before the dispersal of the crowd, is competent to be considered by the jury. And likewise evidence of a similar character, tending to support the Commonwealth's theory of a conspiracy or concerted action on the part of defendants and their friends to prevent the holding of a fair election, in pursuance of which George McIntosh was killed, either relating to incidents occurring previous to the date of election or immediately thereafter and while the crowd was still on the ground, is admissible. Except for the instances severally pointed out herein, we content ourselves with this general statement as to the character of evidence admissible, reserving the right to determine on any future appeal, if there should be one, any question not expressly herein decided as to the competency of any testimony admitted or rejected.

For the reasons stated, the judgment in each case is reversed and the case remanded for further proceedings not inconsistent with this opinion.