## Jones et al. v. Commonwealth.

(Decided Jan. 16, 1934.)

**342**

B. J. BETHURUM and R. B. BIRD for appellants.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

Under a joint indictment charging them with the murder of Denver Parrott, Eb Jones, Mary Lovell, Moran Lovell, and James Lawrence have each been convicted of manslaughter and sentenced to 21, 3, 2, and 2 years imprisonment respectively. The Lovells and Jones are appealing.

As grounds for reversal it is urged (1) that the court erred in excluding competent evidence offered by defendants; (2) that the court erred to the prejudice of some of the defendants in failing to admonish the jury to the effect to be given certain evidence; (3) that the court erred in refusing to instruct the jury to find defendant Mary Lovell not guilty and also erred in instructions given to the jury; and (4) that the commonwealth's attorney was guilty of misconduct prejudicial to appellants.

A proper consideration of these grounds calls for a summary of the evidence. Woody Parrott, a tenant on the farm of Charlie and Mary Lovell, had cultivated a crop of corn on the shares. On the morning of the tragedy, Mr. Parrott and his two sons, Denver and Dallas, went to the field to gather corn, placing it in piles so it could be divided. In going to and from the field they passed the crib some 35 or 40 yards from the Lovell home. They all testified that on their way home for the noon meal, at or near the crib, they met up with Mary Lovell, Moran Lovell, her son, and James Lawrence, a nephew who was visiting at her home; that after the usual greetings, Mrs. Lovell asked Mr. Parrott how he was getting along gathering corn, to which he replied, "Very well." He told her he thought it was going to rain and he would like to haul his corn that afternoon, whereupon, Mrs. Lovell told him he owed her 17 bushels of corn and $17 which must be paid before he moved his share of the crop. He protested that he did not owe her the money or the corn, but that whatever sum was found to be due her when they made the settlement would be paid; that when he made this statement she called him a liar and a son of a bitch. When

Mrs. Lovell applied these epithets to Mr. Parrott, he made some demonstrations as though he might slap her but did not attempt to do so. Denver caught him around the waist and asked him to go home, saying he would talk to Mrs. Lovell and get her to go into the house. Moran Lovell then told the Lawrence boy to go to the house and get the gun. He started toward the house and Mr. Parrott and Dallas started toward their home. Just after they started, Eb Jones came around the crib with a hoe and struck Denver three or four times with it while Mrs. Lovell was holding the latter by the coat. Mr. Parrott testified that he then ran back and Mrs. Lovell and Moran began hollering and Jones went running as fast as he could toward the house; that Mr. Parrott picked up a rock which he threw and struck Eb on the arm. The Parrotts then started on the run toward their house while Eb and Moran were calling to the Lawrence boy to get the gun; that when the Lawrence boy came out of the house with the gun he fired into the air, but when Eb Jones arrived at the house, he took the gun away from Lawrence and fired about four shots at the Parrotts while they were running toward their home. Denver Parrott was shot in the back a little below the shoulder blade and fell at a point something like 170 yards from the Lovell home and died shortly afterwards.

Mrs. Lovell testified that she was alone near the crib when the Parrotts came up; that Mr. Parrott spoke about hauling his corn and she told him he owed her 17 bushels; and that Mr. Parrott replied that every time she told him he owed her 17 bushels of corn she lied; that she told him every time he said he did not owe the corn he was a liar, whereupon he picked up two rocks and Denver Parrott grabbed her by the collar of her dress, called her an old bitch and told her to go to the house or Papa would kill her. About this time Eb Jones came from back of the crib where he had been digging potatoes and asked what was going on; that Denver began cursing and applying vile epithets to Jones and procured some rocks and threw at him. Jones then ran in and struck Denver twice with the hoe, the last lick breaking the handle. All the Parrotts began throwing rocks at Jones, striking him several times. The evidence of all of the defendants is that Moran Lovell and James Lawrence had been away from home, returning about the time the difficulty occurred. The

Lawrence boy testified that he had been out hunting with a .22 repeating rifle and when he returned his attention was attracted to the talking down at the crib; that when he saw the three Parrotts throwing rocks at Eb Jones he fired the gun four or five times toward them. Moran Lovell testified that he was in the yard at the time and saw the Parrotts throwing rocks at Jones and saw James Lawrence fire the shots from the yard. Mrs. Lovell and Jones also testified that the Lawrence boy fired the shots; and all of them testified positively that Jones did not fire a shot or have a gun in his hands at any time during the difficulty, and they all testified that they did not know Denver Parrott had been shot until some time later when they were told by others, although some of them admitted that they saw some people gathered at the place where Denver was said to have fallen. Mrs. Pansy Jones, wife of Eb Jones and daughter of Mrs. Lovell, and E. C. Edwards who testified they witnessed the difficulty corroborated appellants and Lawrence in practically all material details. They also testified that when Mr. Parrott started away, he said he was going to get his gun and clean up the whole bunch.

Shortly after the difficulty Mrs. Lovell asked Jones to take her to Mount Vernon as she wanted to attach Mr. Parrott's corn. When they arrived at Mount Vernon, the officers had heard that some one had been shot and killed and there is evidence that when asked about the report, Mrs. Lovell and Jones stated that no one had been shot out near their home or that there had been no shooting. They admitted they said no one had been shot and at the time did not know that the Parrott boy had been shot, but denied that they said no shooting had been done. One witness testified that after the shooting, James Lawrence stated in his presence that they had all been over to Livingston and it had been agreed that he would take it all on himself. Roscoe Hiatt testified that while he was confined to his home by illness and after the killing, appellant Jones called to see him and discussed the case. He testified that in the course of the conversation Jones said, "Oh if I had not of took the gun." This evidence was admitted over the objections of appellants and Jones denied that he made the statement, but the court refused to permit his wife

who had accompanied him to the Hiatt home to testify that he did not make such a statement.

It is argued by counsel for the appellants that the court erred in excluding this evidence of Mrs. Jones and in not admonishing the jury that Mr. Hiatt's evidence as to statements made by Jones should not be considered as against Mary Lovell and Moran Lovell. It is at once apparent how vitally important this evidence was, in view of the conflict in evidence as to who actually did the shooting. Appellants, Lawrence, and two other witnesses stated positively that James Lawrence fired the shots, while Mr. Parrott and his son Dallas are equally positive in their statement that Lawrence did not fire the shot which killed Denver Parrott. In the circumstances this evidence was calculated to and no doubt did influence the jury in determining their verdict. Unquestionably it was competent as to appellant Jones. Wright v. Commonwealth, 155 Ky. 750, 160 S. W. 476; Roberson's Kentucky Criminal Law, sec. 1808. But such a statement made after the commission of the alleged crime and out of the presence or hearing of his codefendants is incompetent as to them and the court erred in failing to properly admonish the jury not to consider that evidence as against the other defendants. However, since this evidence was only admissible and competent as to appellant Jones, the court did not err in refusing to permit his wife to testify concerning it.

In answer to contention by counsel for appellants that the court erred in not giving a self-defense instruction as to Eb Jones, it is argued by counsel for the commonwealth, since he testified that he had no gun and fired no shots, and the evidence for the commonwealth that he did so further shows that at the time the Parrotts had abandoned the difficulty and were running away from it, no such instruction was warranted.

The severity of the punishment fixed by the verdict against Jones as compared with that of his codefendants, clearly indicates a conclusion upon the part of the jury that he fired the fatal shots. The evidence of appellants, Lawrence, and two other witnesses tends to show that all the shots were fired during the affray and while deceased and the other Parrotts were making a vigorous assault upon Jones with rocks under circumstances that would warrant him or others in his behalf

in using such force as was necessary or as reasonably appeared to him or them to be necessary to repel the attack. It is peculiarly the province of a jury to determine the credibility of witnesses and the weight to be given their evidence, and, in the exercise of that function, they may believe the evidence of a single witness or of a set of witnesses and disbelieve that of others. And they are not confined to the literal import of the evidence of any witness or number of witnesses, but may draw therefrom reasonable deductions and inferences. The jury may have concluded that the shots were actually fired before deceased or his father or brother had left the scene of the affray, but that Jones and not Lawrence fired them; or they may have believed that when the fatal shots were fired, the Parrotts had retreated from the immediate scene of the difficulty but had not in good faith abandoned it—a deduction warranted by slight evidence—yet under the instructions given they could not acquit Jones even though they further believed he was acting in his necessary self-defense.

Even though a defendant may deny any participation in the commission of a homicide, he is entitled to an instruction on self-defense if there is any evidence tending to raise that issue. See Combs v. Commonwealth, 196 Ky. 804, 246 S. W. 132, and authorities therein cited.

Our conclusion is that appellant Jones was entitled to a self-defense instruction with such modifications as were warranted by the evidence.

Complaint is made that the instructions as a whole are too long, involved, and difficult to understand. In cases of this character the instructions are necessarily long, but there is no merit in the contention that the instructions given are calculated to confuse or mislead a jury of ordinary intelligence and understanding.

Since the judgment must be reversed for reasons already indicated and some of the alleged errors will not likely occur on another trial, all other questions are specifically reserved.

Judgment reversed as to each appellant and causes remanded for new trial in conformity with this opinion.